DAVID N. WOLF (6688)
Assistant Utah Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
160 East 300 South, Sixth Floor
PO BOX 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
E-mail: dnwolf@utah.gov
Attorneys for Defendant James Anderson

IN THE UNITED STATES DIRSTRICT COURT FOR THE

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALEX COTA, and individual, : | |
| Plaintiff, : | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY** |
| vs. : | |
| J. ANDERSON, an individual; WAYNE ASHTON, an individual; RICHARD GARDEN, M.D., an individual; and RON MILLER, an individual, : | Case No. 2:04CV1048TC  Judge Clark Waddoups  Magistrate Judge David Nuffer |
| Defendants. : | |
| : | |

David N. Wolf, Assistant Utah Attorney General, counsel for Defendant James

Anderson, hereby submits this Memorandum in Opposition to Plaintiff's Motion to Re-Open

Discovery.

## INTRODUCTION

More than 4 and ½ years ago, Plaintiff filed a lawsuit against Defendants Jim Anderson, Wayne Ashton, Ron Miller and Dr. Richard Garden under 42 U.S.C. § 1983, alleging deprivation of his Eighth Amendment right to be free from cruel and unusual punishment.  Specifically, he alleged that Defendants Ashton and Anderson injured his left leg while transporting him from California to Utah and that Defendants Garden and Miller failed to adequately treat the injured leg when he arrived in Utah.  Plaintiff's claims against Defendant Richard Garden, M.D. ("Garden") were dismissed because Plaintiff failed to state a claim upon which relief could have been granted.  Neither Wayne Ashton nor Ron Miller were properly served with the Complaint and the time for such service has long since expired.  Thus, only Defendant Anderson remains a defendant in this lawsuit.

As more fully set forth below, Plaintiff's Motion to Re-Open Discovery should be denied because 1) the motion is untimely, 2) Plaintiff was not diligent in conducting discovery within the discovery period; 3) Plaintiff should have foreseen the need to complete the discovery within the time period established by the Court; 4) Defendant would be prejudiced if discovery is re-opened and Plaintiff is permitted to add new claims or parties; and 5) the discovery which Plaintiff seeks to conduct is futile and, thus, would not lead to the discovery of relevant evidence.

## FACTS

For the limited purposes of this motion only, Defendant Anderson sets forth the following facts:

1. In January 2004, while incarcerated in California, Plaintiff had surgery on his left leg to perform a bone graph and insert plates and screws in the leg. (*Amended Civil Rights Complaint* at ¶ 7.) (doc. 24.)

2. On March 14, 2004, Wayne Ashton and James Anderson, Utah Adult Probation and Parole agents, took Plaintiff into custody and transported him from James Town State Prison in California to Utah.  (*Id.* at ¶¶ 7-8.)

3. Plaintiff has alleged that his leg was injured during the transport. (*Id.* at ¶¶ 9-16.)

4. Plaintiff has further alleged that when Plaintiff was booked into the Utah State Prison, he complained of a leg injury to the intake staff.  Plaintiff claims that his injury was not examined or treated at that time. (*Id.* at ¶ 20.)

5. Plaintiff alleges that he submitted a sick call and complained repeatedly about his leg injury between March 18, 2004 and March 24, 2004.  At some point, he received an x-ray, was given a boot cast, and was scheduled to see an orthopedic surgeon. (*Id.* at ¶¶ 21–22.)

6. On April 27, 2004, Plaintiff underwent surgery at the University of Utah Hospital to repair his leg. (*Amended Complaint* ¶ 24.)

7. Six months later, on October 22, 2004, Plaintiff filed a *Civil Rights Complaint* against J. Anderson, Wayne Ashton, and John Does 1–10. (*Civil Rights Complaint* at 1.) (doc. 3.)

8. Almost two-and-half years later, on February 12, 2007, this Court issued a *Screening Order*, ordering service of process and giving Plaintiff thirty days to amend his Complaint to name real parties in lieu of John Does. (doc. 17; *Screening Order* at 12.)

9. Plaintiff filed an *Amended Civil Rights Complaint* on March 8, 2007, adding Richard Garden, M.D. and Ron Miller as parties. (*Amended Civil Rights Complaint* at 1.) (doc. 24.)

10. Plaintiff alleged in the Amended Complaint that the medical staff at the Utah State Prison, including Richard Garden, M.D., failed to provide him with adequate medical care in violation of the Eighth Amendment (*Amended Civil Rights Complaint* at ¶ 26, Count II).

11. Based on the parties' stipulated motion, on March 7, 2008, Judge Tena Campbell issued an Order dismissing Dr. Garden as a defendant in this action.[1]

12. Dr. Garden is the Medical Administrator at the Utah State Prison ("USP") and oversees the administration and delivery of medical services to inmates throughout the USP population. (Declaration of Richard Garden, ¶ 2.)[2]

13. Dr. Garden has worked in this position since August 1994. (*Id.* at ¶ 3.)

14. Dr. Garden's duties also include overseeing the maintenance and keeping of records relating to such medical services. (*Id.* at ¶ 4.)

15. Dr. Garden has access to the medical clearance records and has reviewed said records regarding inmate Alex Cota for the period January 1, 2004 through September 30, 2007. (*Id.* at ¶ 5.)

---

[1] *See* Judge Campbell's Order of Dismissal (doc. 77).

[2] Declaration of Richard Garden (doc 52-2).

4

16. The documents attached to Dr. Garden's Declaration are true and correct copies of relevant portions of Plaintiff's medical history while at USP and accurately reflect his requests for, and the delivery of, medical services to Plaintiff relevant to the claims made in this lawsuit. (*Id.* at ¶ 6.)[3]

17. As reflected in Plaintiff's medical records, Plaintiff returned to the Utah State Prison on or about March 18, 2004. Plaintiff was examined and his medical intake was done by Thomas Graham, R.N. Plaintiff did not express any concerns or problems at this time. (*Id.* at ¶ 8; *see also* documents labeled as Cota 445-446.)

18. On March 18, 2004, Plaintiff filed a medical request and was seen by Paul Rosser, CFNP. Plaintiff refused a physical examination and denied any medical needs except for left lower leg pain. Plaintiff told Rosser that he had recently been seen at the University Medical Center and was informed that he had hardware failure. Rosser ordered that an x-ray be taken the following day. Plaintiff was given ibuprofen for his discomfort. (*Id*. at ¶ 10, *see also* documents labeled as Cota 446.)

19. Mr. Rosser no longer works for the Utah Department of Corrections or the State of Utah. (Id. at ¶ 11.)

20. On March 19, 2004, Plaintiff was given ibuprofen. (Id. at ¶ 12; *see also* documents labeled as Cota 447.)

21. On March 20, 2004, Plaintiff submitted a Health Care Request Form. (*Id.* at ¶ 13; *see also* documents labeled as Cota 447.)

---

[3] See Exhibit G to the Martinez Report (doc 51-7). Plaintiff's medical records were previously filed under seal on October 15, 2007 and will not be re-submitted to the Court unless specifically requested.

22.     On March 22, 2004, Plaintiff's Tibia and Fibula were x-rayed.  The x-ray showed a healed segmental fracture of the mid shaft of the left tibia.  Non-healed fracture of the proximal left Fibula.  This finding confirmed the diagnosis of a hardware failure.  (*Id.* at ¶ 13; *see also* documents labeled as Cota 448.)

23.     On March 29, 2004, Plaintiff was given ibuprofen. (*Id.* at ¶ 15; *see also* documents labeled as Cota 449.)

24.     On March 30, 2004, Plaintiff was seen in the infirmary for "left leg pain, swelling and history of multiple fractures."  Plaintiff was diagnosed with Edema (watery fluid in the tissues of the body) and placed in a walking boot. (*Id.* at ¶ 16; *see also* documents labeled as Cota 450.)

25.     On March 31, 2004, Plaintiff was re-evaluated for leg swelling and fracture by Dr. Kennon Tubbs.  Dr. Tubbs referred Plaintiff to the University Medical Center Ortho Clinic. (*Id.* at ¶ 17; *see also* documents labeled as Cota 450.)

26.     On April 19, 2004, Plaintiff was seen at the University Medical Center Ortho Clinic and scheduled for surgery to remove the hardware in his lower left leg.  (*Id.* at ¶ 18; *see also* documents labeled as Cota 454.)

27.     Plaintiff had surgery to remove the failed hardware from his lower left leg on April 27, 2004, at the University Medical Center. (*Id.* at ¶ 19; *see also* documents labeled as Cota 455.)

28.     The medical treatment Plaintiff received was proper and adequate for his circumstances.  (*Id.* at ¶ 20.)

29. Plaintiff's failed hardware was immediately addressed upon his return to the Utah State Prison on March 18, 2004. Plaintiff was provided a wheelchair, pain medication and referred to the University Medical Center Ortho Clinic. (*Id.* at ¶ 21.)

30. Hardware failure is not a medical emergency. At no time, from Plaintiff's return to the Utah State Prison on March 18, 2004, until his surgery to remove the failed hardware, on April 27, 2004, did his medical needs become an emergency. (*Id.* at ¶ 22.)

31. Plaintiff's quality of treatment, including the responsiveness of the prison medical staff, the accuracy of the diagnosis, his pain management, and the timing of the referral to and surgery at the University of Utah Medical Center were comparable to the quality of treatment a non-inmate citizen would expect. (*Id.* at ¶ 23.)

32. Plaintiff did not conduct any discovery during the pendency of this lawsuit.

33. Plaintiff, through counsel, agreed to be bound by the terms and conditions of the Scheduling Order entered by this Court on February 15, 2008. (doc. 73).

34. Pursuant to the Court's Scheduling Order, October 1, 2008 was the last day to conduct fact discovery. The Court further set October 31, 2008 as the deadline for filing a motion to amend the pleadings or to add new parties. The case was set for a four-day jury trial to begin on August 10, 2009. (*See* February 15, 2008 Scheduling Order.)

35. In February 2009, Plaintiff's counsel contacted Defendant's counsel and requested that the Scheduling Order be modified. Specifically, Plaintiff's counsel suggested that 1) the parties find a mutually convenient date to depose Plaintiff; 2) following the Plaintiff's deposition, Defendant would file a dispositive motion; 3) if the dispositive motion was denied,

the parties' counsel would meet and confer to set a schedule to govern the remaining issues in the case.

36. On March 30, 2009, this Court entered the Scheduling Order, setting dates corresponding to those requested by Plaintiff's counsel (doc. 91).

37. Now, Plaintiff again seeks to set aside the Scheduling Order and has asked this Court to re-open discovery to facilitate adding new claims and parties to this long-pending case.

38. Defendant opposes Plaintiff's request to re-open discovery.

## ARGUMENT

Plaintiff has cited the Tenth Circuit case of *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987), which accurately identifies the factors to be considered in determining whether to re-open discovery.[4] These factors include: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." After considering these factors, this Court should deny Plaintiff's Motion to Re-Open Discovery.[5]

---

[4] *See also SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1514 (10th Cir. 1990).

[5] After considering many of the same factual issues that are present in the case at bar, the *Smith* court affirmed the district court's denial of the motion to re-open discovery as well as the dismissal of the case as a sanction. *Smith*, 834 F.2d at 171.

## I. PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY SHOULD BE DENIED AS UNTIMELY.

On February 8, 2008, Plaintiff, through counsel, participated in an Attorneys' Planning Meeting Conference and subsequently proposed a Scheduling Order to govern the discovery and trial of this action. On February 15, 2008, pursuant to the parties' request, Magistrate Judge David Nuffer entered a Scheduling Order in this case. This Court determined that October 31, 2008 would be the last day to file a motion to amend the pleadings or to add new parties. The Court further set October 1, 2008 as the deadline for conducting fact discovery. The case was set for a four-day jury trial to begin on August 10, 2009.

Plaintiff chose not to conduct any discovery during the discovery period. Plaintiff also chose not to seek to amend his Complaint or add new parties prior to the expiration of the court-imposed deadlines. Prior to the expiration of the discovery cut-off, Defendant's counsel sought to depose Plaintiff.[6] Plaintiff's counsel was unable to produce Plaintiff for deposition on the agreed upon date and, thus, Defendant's counsel agreed to accommodate Plaintiff by rescheduling Plaintiff's deposition to a later date.[7]

In February 2009, Plaintiff's counsel contacted Defendant's counsel and requested that the Scheduling Order be modified. The stated purpose of the requested modification to the

---

[6] Defendant sought to depose Plaintiff prior to the expiration of the discovery cut-off. Plaintiff's counsel indicated that he was unable to attend Plaintiff's deposition on any of the proposed dates. Accordingly, to accommodate the Plaintiff's counsel's schedule, Plaintiff's deposition was originally noticed for October 20, 2008. See letter from D. Wolf to S. Linton, dated September 24, 2008, a true and correct copy of which is attached hereto as Ex. A.

[7] On three separate occasions, Plaintiff's counsel requested that Plaintiff's deposition be rescheduled and, on each occasion, Defendant has agreed to reschedule Plaintiff's deposition to accommodate Plaintiff and his counsel. *See* Notice of Cancellation and Continuance of the Deposition of Plaintiff Alex Cota, dated May 28, 2009 (doc 96).

Scheduling Order was to facilitate the filing of Defendant's dispositive motion, prior to the case being certified as ready for trial. Specifically, Plaintiff's counsel suggested that 1) the parties find a mutually convenient date to depose Plaintiff; 2) following the Plaintiff's deposition, Defendant would file a dispositive motion; 3) if the dispositive motion was denied, the parties' counsel would meet and confer to set a schedule to govern the remaining issues in the case. On March 30, 2009, this Court entered the Scheduling Order, setting dates corresponding to those requested by Plaintiff's counsel and agreed to by Defendant.[8]

Pursuant to the agreed upon Scheduling Order, Defendant's counsel re-noticed Plaintiff's deposition for June 2, 2009. A few days prior to the scheduled deposition, however, Plaintiff filed the pending motion to re-open discovery, with the hope of discovering facts which would lead to adding new parties and new claims to this lawsuit.

This Court should deny Plaintiff's motion to re-open discovery because it is untimely. Plaintiff, while represented by the very same counsel who brings this motion, previously agreed to the dates in the prior Scheduling Order. Over the course of more than four years, Plaintiff has had ample opportunity to conduct whatever discovery he deemed appropriate. Plaintiff should not be permitted to circumvent the dates in the Scheduling Order by re-opening discovery. This is especially true, in the instant case, where Defendant has already agreed to Plaintiff's request to modify the Scheduling Order to permit limited discovery prior to the preparation and filing of dispositive motions. In essence, this Court should not permit Plaintiff to ignore its prior commitment to a Scheduling Order, which the Plaintiff requested, prepared and filed. Defendant

---

[8] *See* Scheduling Order dated March 30, 2009 (doc. 91).

respectfully requests that this Court deny Plaintiff's motion to re-open discovery and confirm the parties' obligation to abide by the prior Scheduling Order, which was requested, prepared and filed by Plaintiff's counsel.

## II. THE NEED FOR THE REQUESTED DISCOVERY WAS CLEARLY FORESEEABLE WHEN THIS COURT ESTABLISHED THE DISCOVERY PERIOD.

One of the factors which this Court should consider in deciding whether to re-open discovery is "the foreseeability of the need for the additional discovery in light of the time allowed for discovery by the district court." *Smith*, 834 F.2d at 169. It certainly makes sense to allow for additional time to conduct discovery if newly identified facts or issues arise late in the process. But, of course, that is not the case here. In this case, Plaintiff alleged medical neglect claims in his original Complaint.[9] The answers of the respective defendants and particularly the Declarations attached to the court-ordered *Martinez* report, made clear that it was the Defendants' position that Plaintiff's medical condition was in no way neglected. Without question, from the outset, Plaintiff either knew or should have known that he would need to discover facts or evidence to refute Defendants' position. Thus, it is abundantly clear that the need to gather evidence in support of his claims of medical neglect was "foreseeable," even before the Court issued its Scheduling Order and set the time periods governing discovery.

---

[9] In fact, Plaintiff alleged medical neglect in his administrative grievances, which preceded the filing of his federal lawsuit.

### III. DEFENDANT WOULD BE PREJUDICED IF DISCOVERY WAS RE-OPENED.

Contrary to Plaintiff's contention, Defendant would be prejudiced if discovery were re-opened at this late date. This case has been pending for close to five years. Defendant is entitled to a just and speedy resolution of the claims brought against him. The financial and emotional burdens of being a defendant in a civil lawsuit are both real and significant. Re-opening discovery would unreasonably and unnecessarily prolong this litigation. The costs of preparing for and participating in discovery are not insignificant. If discovery is re-opened, the commitment of time and resources will be borne both by the named Defendant and the unknown parties to whom the requested discovery will also be directed.

### IV. PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY SHOULD BE DENIED BECAUSE PLAINTIFF WAS NOT DILIGENT IN OBTAINING DISCOVERY WITHIN THE GUIDELINES ESTABLISHED BY THE COURT

One of the factors which this Court should consider in deciding whether to re-open discovery is whether Plaintiff "was diligent in obtaining discovery within the guidelines established by the court." *Smith*, 834 F.2d at 169. Here, it is abundantly clear that Plaintiff was not diligent in obtaining discovery within the court-imposed deadlines. In fact, Plaintiff made no effort to conduct any discovery in this case whatsoever. Plaintiff alludes to the numerous counsel who have represented him over the course of the litigation and suggests that Plaintiff may not have been adequately represented. However, Plaintiff does not suggest that his respective counsel was unable to conduct discovery prior to discovery cut-off. Nor does Plaintiff contend that Defendant failed to cooperate in discovery or otherwise impeded his ability to

discover facts in support of his claims. Other than referring to the possibility of Plaintiff having been represented by less than diligent counsel, Plaintiff has not provided any excuse as to why discovery was not conducted.[10]

Moreover, these very arguments were considered and rejected by the Tenth Circuit in *Smith*. In *Smith*, the plaintiff sought to re-open discovery to depose a fact witness. The district court denied this request, concluding that the deposition could easily have been taken within the time period allowed for discovery. *Id.* at 169-70. The plaintiff represented, through counsel, that he could not proceed to trial without conducting the requested discovery. *Id.* at 170. Upon the dismissal of the case, the plaintiff/appellant contended that he should not be punished for the conduct of his counsel, namely his counsel's failure to conduct the appropriate discovery within the allotted time. *Id.* In rejecting this argument, the Tenth Circuit reiterated the following rule of law, previously announced in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962):

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer,* 101 U.S. [11 Otto] 320, 326 [25 L.Ed. 955 (1879)] (footnote omitted).

---

[10] To the extent Plaintiff believes that he was not adequately represented by any of his former counsel, he may consider filing a malpractice action against them. Ineffective assistance of counsel, however, is not an appropriate basis for re-opening discovery in this case. *See Smith*, 834 F.2d at 170-71; *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962).

*Smith*, 834 F.2d at 170 (quoting *Link,* 370 U.S. at 633-34). The United States Supreme Court "also remarked that any rule which considered the client's lack of fault would be to visit the sins of client's counsel on the opposing party." *Smith*, 834 F.2d at 170-71 (citing *Link 370 U.S.* at 634 n.10.)

Plaintiff essentially makes the same arguments here as those which were rejected by the Tenth Circuit in *Smith*. Plaintiff blames his prior counsel for the failure to conduct discovery within the court-imposed deadlines. However, just as in *Smith*, Plaintiff had ample opportunity to conduct whatever discovery he deemed necessary and failed to do so. Accordingly, Plaintiff should be bound by his counsel's actions or more particularly his inaction.

## V.   PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY SHOULD BE DENIED AS FUTILE

Another factor which this Court should consider in deciding whether to re-open discovery is "the likelihood that the discovery will lead to relevant evidence." *Smith*, 834 F.2d at 169. Plaintiff contends that the discovery he seeks to conduct will lead to relevant evidence because he believes it will confirm his allegations of medical neglect. Of course, Plaintiff does not provide any evidentiary support for his contentions. Moreover, these very same issues were already addressed by Dr. Garden's review of Plaintiff's medical records, which demonstrated that "[t]he medical treatment Plaintiff received was proper and adequate for his circumstances." (Declaration of Dr. Garden, ¶ 19.) "Plaintiff's failed hardware was immediately addressed upon his return to the Utah State Prison on March 18, 2004." (*Id.* at ¶ 21.) "Plaintiff was provided a wheelchair, pain medication and referred to the University Medical Center Ortho Clinic." (*Id.*)

Dr. Garden further opined that "[h]ardware failure is not a medical emergency.  At no time, from Plaintiff's return to the Utah State Prison on March 18, 2004, until his surgery to remove the failed hardware, on April 27, 2004, did his medical needs become an emergency."  (*Id.* at ¶ 22.)  According to Dr. Garden, "Plaintiff's quality of treatment, including the responsiveness of the prison medical staff, the accuracy of the diagnosis, his pain management, and the timing of the referral to and surgery at the University of Utah Medical Center were comparable to the quality of treatment a non-inmate citizen would expect."  (*Id.* at ¶ 23.)

While Plaintiff may disagree with Dr. Garden's assessment of his medical records and the substance of his opinions in general, Plaintiff had ample opportunity to explore these issues during the more than four year period of time that this case was pending, prior to the expiration of the discovery cut-off.  Instead, Plaintiff voluntarily agreed to dismiss Dr. Garden from this lawsuit and has utterly failed to identify any basis for his claim of medical neglect.

Even now, Plaintiff has not identified any specific discovery he seeks to conduct to refute the content of his medical records or Dr. Garden's opinions concerning the quality of medical care he received.  Plaintiff's request to serve interrogatories, document requests and conduct unidentified depositions lacks the specificity necessary to determine whether this discovery, even if allowed, would likely lead to the discovery of facts relevant to Plaintiff's claims of medical neglect.  Plaintiff has not even revealed the names of the individuals he seeks to depose.  Nor has Plaintiff provided any legitimate explanation as to why he could not depose these individuals prior to the expiration of the discovery period.  *Cf. Zhou v. Pittsburgh State Univ.*, 252 F. Supp 1194, 1206-07 (D. Kan. 2003) (denying motion to reopen discovery, finding Plaintiff's untimely

request to depose unidentified individuals not likely to lead to discovery of relevant evidence.) This Court should not permit Plaintiff to re-open discovery and engage in the proverbial "fishing expedition," with the hope of uncovering some undefined and unidentified factual support for claims which are no longer asserted in Plaintiff's Complaint.

## **CONCLUSION**

For the reason stated above, Defendant respectfully requests that this Court deny Plaintiff's Motion to Re-Open Discovery.

DATED this 3rd day of June, 2009.

                                  MARK L. SHURTLEFF
                                  Utah Attorney General


                                 /s/ David N. Wolf
                                  DAVID N. WOLF
                                  Assistant Attorneys General
                                  Attorneys for Defendant Jim Anderson

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of June, 2009, the forgoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY**, was electronically filed using the Court's CM/ECF system, and was served by the CM/ECF system to the following CM/ECF participants:

David J. Williams
Mark E. Hindley
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111-4904

/s/ Yvonne Schenk